## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| | ) | |
| **IN RE:  GRACO TURBOBOOSTER** | ) | |
| **CHILD SAFETY SEAT PRODUCTS** | ) | **MDL No. 2315** |
| **LIABILITY LITIGATION** | ) | |
| | ) | |

## JOINT RESPONSE OF DEFENDANTS
## GRACO CHILDREN'S PRODUCTS INC. AND NEWELL RUBBERMAID INC.
## IN OPPOSITION TO PLAINTIFF CHRISTINA M. ROBINSON'S
## MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois  60606
312-258-5500
312-258-5600 (facsimile)
jkrasovec@schiffhardin.com
hoertle@schiffhardin.com

*Counsel for Defendants Graco Children's
Products Inc. and Newell Rubbermaid Inc.*

*D.S.C., No. 2:11-cv-02379*
*N.D. Fla., No. 4:11-cv-00477*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

I.     Summary of the Litigation. ................................................................. 2

    A.    The Graco TurboBooster. ...................................................... 2

    B.    Prior Graco TurboBooster Litigation......................................... 4

    C.    The *Robinson* Action. .......................................................... 6

    D.    The *Lamb* Action. ............................................................... 7

ARGUMENT ................................................................................................................. 7

I.     Robinson Fails to Show That Her Case and *Lamb* Are Exceptional Cases Which Share Unusually Complex Questions of Fact Justifying Transfer of *Lamb* to South Carolina. .................................................... 7

    A.    *Robinson* and *Lamb* Are "Only Two Actions" That Do Not Support Transfer. ................................................................. 8

    B.    The Transfer of *Lamb* to the District of South Carolina Will Not Be for the Convenience of the Parties and Witnesses and Will Not Promote Just and Efficient Discovery. ...................................... 12

        1.    Common Discovery Has Already Been Completed. ................... 12

        2.    Common Counsel Can Adequately Facilitate Coordination of Discovery Without Transfer. ............................. 14

        3.    Discovery Will Focus on the Separate Factual Issues Unique to *Robinson* and *Lamb*..................................... 16

II.    Alternatively, Robinson's Motion Should Be Stayed Pending Rulings by the *Robinson* and *Lamb* Courts on All Rule 12(b) Motions. .......................... 18

CONCLUSION.............................................................................................................. 20

## INTRODUCTION

Defendants Graco Children's Products Inc. ("Graco") and Newell Rubbermaid Inc. ("Newell"),[1] pursuant to Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, respectfully submit this Joint Response in Opposition to Plaintiff Christina Robinson's ("Robinson") Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407.

The request to transfer before this Panel pertains to only two actions — *Christina M. Robinson v. Graco Children's Products Inc. and Newell Rubbermaid Inc.*, No. 2:11-cv-02379-RMG (D.S.C. filed Sept. 6, 2011) ("*Robinson*"), and *Margaret Lamb and Eileen M. Buser v. Graco Children's Products Inc. and Newell Rubbermaid Inc.*, No. 4:11-cv-00477-RH-WCS (N.D. Fla. filed Sept. 20, 2011) ("*Lamb*").[2] *Robinson* and *Lamb* are two unexceptional cases sharing no common complex questions of fact properly before their respective District Courts, and Robinson's moving papers do not carry — indeed do not even recognize — the elevated burden of proving that a transfer is necessary when only two cases are at issue.

Contrary to Robinson's assertions, these cases lack common questions of fact and law. *Robinson* is a South Carolina-only putative class action asserting only South Carolina state law claims, while *Lamb* is a Florida-only putative class action asserting only Florida state law claims. Thus, these actions are completely separate and the alleged classes are mutually exclusive.

The minimal overlap between these two cases in fact precludes transfer. The same lead plaintiff and defense counsel have appeared in both *Robinson* and *Lamb*. Due to having common counsel, the parties can coordinate and avoid duplicative discovery without resorting to transfer

---

[1] Graco and Newell are sometimes referred to collectively herein as "Defendants."

[2] Christina M. Robinson, Margaret Lamb and Eileen M. Buser are sometimes referred to collectively herein as "Plaintiffs."

of the *Lamb* action.  Furthermore, the only factual question identified by Robinson as common to both cases is whether certain versions of the TurboBooster comply with a certain part of the Federal Motor Vehicle Safety Standard applicable to child booster seats.  That question, however, cannot serve as the basis for transfer because it is not a question any federal court can answer.  Moreover, Plaintiffs' counsel in both actions have already completed, in a recently tried personal injury case, extensive discovery over the course of more than two years pertaining to the design and testing of the TurboBooster on the very same issues raised in the *Robinson* and *Lamb* Complaints.  Discovery in *Robinson* and *Lamb* instead will focus on the factual issues unique to Plaintiffs Robinson, Lamb and Buser and their respective putative class members.  Accordingly, no efficiencies will be gained by transfer and Robinson's motion for transfer should be denied.

Alternatively, Robinson's motion for transfer should be stayed until both the *Robinson* and *Lamb* Courts find the existence of federal subject-matter jurisdiction.  Because none of the Plaintiffs alleges a legally cognizable injury, none of them has standing under Article III of the Constitution.  Any transfer should be stayed until each District Court rules on Defendants' Rule 12(b) motions pending in both cases, the results of which could render the transfer sought here moot.

I.      **Summary of the Litigation.**

A.      **The Graco TurboBooster.**

The Graco TurboBooster is a belt-positioning booster seat that acts to elevate a child into a position where the vehicle's lap and shoulder belts fit the child properly.[3]  Two armrests on

---

[3]  *See Robinson* Compl. ¶¶ 10, 16, attached as Ex. A; *Lamb* Compl. ¶¶ 12, 18, attached as Ex. B.

either side of the child provide, as the name suggests, places for the child to rest his or her arms.[4] The armrests also show the caregiver where to route the lap and shoulder belts on the child.[5] Thus, the TurboBooster acts as a pre-crash positioner of the child in the vehicle's restraint system, boosting the child up into a position similar to that of an adult using the same lap-shoulder belt.[6]

Plaintiffs allege that in certain tests of the TurboBooster, the armrests either change position or separate from the base of the seat.[7] They go on to allege that such movement or separation of the armrests constitutes a violation of one part of the Federal Motor Vehicle Safety Standard ("FMVSS") applicable to child car seats.[8] From that, Plaintiffs claim that certain versions of the TurboBooster contain a safety-related defect. Plaintiffs go on to claim that they have suffered what they vaguely describe as "monetary loss" due to having purchased a TurboBooster, though they do not allege they sustained any physical injury or property damage.[9]

The TurboBooster, like all child car seats sold in the United States, is extensively regulated by the National Highway Transportation Safety Administration ("NHTSA"), an agency of the United States Department of Transportation.[10] Federal Motor Vehicle Safety Standard 213 ("FMVSS 213") provides requirements for the performance of child seats.[11] NHTSA is charged under federal law with the *exclusive responsibility* for setting motor vehicle safety standards,

---

[4]  *See Robinson* Compl. ¶¶ 17, 18; *Lamb* Compl. ¶¶ 19, 20.

[5]  *See Robinson* Compl. ¶ 17; *Lamb* Compl. ¶ 19.

[6]  *See Robinson* Compl. ¶¶ 16, 17; *Lamb* Compl. ¶¶ 18, 19.

[7]  *See Robinson* Compl. ¶¶ 23–30; *Lamb* Compl. ¶¶ 25–32.

[8]  *See Robinson* Compl. ¶ 31; *Lamb* Compl. ¶ 33.

[9]  *See Robinson* Compl. ¶¶ 42–73; *Lamb* Compl. ¶¶ 44–75.

[10]  *See Robinson* Compl. ¶¶ 10, 22; *Lamb* Compl. ¶¶ 12, 24.

[11]  *See Robinson* Compl. ¶¶ 10–15; *Lamb* Compl. ¶¶ 12–17.

determining whether a particular product complies with those standards, determining whether such noncompliance is of any consequence, and determining what remedy should be invoked, if any, for a consequential noncompliance.[12]  NHTSA has never determined, however, that any version of the TurboBooster was noncompliant with FMVSS 213 in the manner alleged. Accordingly, there can be no defect in the TurboBooster based on a purported finding of noncompliance with FMVSS 213 — and in any event that is a determination made exclusively by NHTSA.[13]

**B.     Prior Graco TurboBooster Litigation.**

Earlier this year, one of the plaintiffs' counsel in both *Robinson* and *Lamb* (Douthit, Frets, Rouse, Gentile & Rhodes, LLC (the "Douthit Firm")) concluded a two-plus year individual personal injury lawsuit in the Eastern District of Texas, *McCune v. Graco Children's Products Inc*.[14]  The *McCune* case involved the same allegation of defect in the TurboBooster, *i.e.*, the armrest can change position or separate in a test simulating a crash.[15]  In *McCune*, a jury verdict was entered *in favor of Graco*, finding the TurboBooster's armrest was not defective and

---

[12]  *See Robinson* Defs.' Mem. Supp. Mot. Dismiss 12–21, attached as Ex. C; *Lamb* Defs.' Mem. Supp. Mot. Dismiss 11–19, attached as Ex. D.

[13]  *Robinson* Defs.' Mem. Supp. Mot. Dismiss 12–21; *Lamb* Defs.' Mem. Supp. Mot. Dismiss 11–19.

[14]  Docket Report 1–22, *McCune v. Graco Children's Prods. Inc.*, No. 5:09-cv-00107-DF (E.D. Tex. filed Nov. 11, 2011), attached as Ex. E; *Robinson* Compl. 16; *Lamb* Docket Report 1, attached as Ex. F.

[15]  Fourth Am. Compl. ¶¶ 13–25, *McCune v. Graco Children's Prods. Inc.*, No. 5:09-cv-00107-DF (E.D. Tex. filed July 27, 2011), attached as Ex. G.

was not a producing cause of a child's injuries in a car accident.[16]   Defendants' counsel in *Robinson* and *Lamb* were counsel for Graco in *McCune* as well.[17]

The *Robinson* and *Lamb* cases are in fact born out of the *McCune* litigation.  Both the *Robinson* and *Lamb* complaints specifically rely on and explicitly reference the discovery conducted in *McCune* to support their claims.[18]  This reliance is unsurprising.  While *McCune* was pending, the Douthit Firm obtained a substantial amount of discovery pertaining to the TurboBooster's armrest:

- The Douthit Firm issued, and Graco responded to, a total of 202 separate requests for production, including subparts;

- Graco produced to the Douthit Firm a total of approximately 89,000 pages of documents, as well as 240 DVDs that contained videos and/or photographs of crash testing conducted on the TurboBooster;

- Graco produced documents including materials recovered during an e-discovery search;

- Graco made available for inspection by the Douthit Firm and their experts several TurboBooster seats that had been sled-tested by Graco, and the Douthit Firm and their expert inspected those seats;

- The Douthit Firm took the depositions of seven current or former Graco employees.[19]

On the heels of the fully discovered *McCune* case, the *Robinson* and *Lamb* Complaints were filed.

---

[16]   Final J., *McCune v. Graco Children's Prods. Inc.*, No. 5:09-cv-00107-DF (E.D. Tex. filed Aug. 24, 2011), attached as Ex. H.

[17]   Aff. Joseph J. Krasovec III ¶ 2, Nov. 14, 2011, attached as Ex. I.

[18]   *Robinson* Compl. ¶¶ 35, 67; *Lamb* Compl. ¶¶ 37, 69.

[19]   Aff. Joseph J. Krasovec III ¶¶ 4–9.

C.    **The *Robinson* Action.**

Robinson seeks to pursue two South Carolina-specific claims against Graco and Newell on behalf of herself and a putative class of "[a]ll South Carolina residents who purchased a Graco TurboBooster manufactured prior to the implementation of the current TurboBooster design."[20]  Robinson alleges, in essence, that she was deceived into purchasing a TurboBooster by representations that it complied with FMVSS 213.[21]  The Douthit Firm and the Charleston, South Carolina, firm of Richardson Patrick Westbrook & Brickman LLC (the "Richardson Patrick Firm") represent Robinson in that action.[22]

Graco and Newell have moved to dismiss the *Robinson* Complaint for lack of subject-matter jurisdiction and for failure to state a claim, and to strike all class action allegations contained therein.[23]  Specifically, Robinson's Complaint failed to allege facts sufficient to establish that she has Article III standing to maintain her claims, that she can state a claim for relief under South Carolina law, or that she could satisfy the requirements of establishing a putative South Carolina-wide class.  Additionally, the *Robinson* Complaint is fatally flawed because her allegation that certain versions of the TurboBooster contained a safety related defect turns on whether those products fail to comply with one aspect of FMVSS 213.  That question, however, belongs exclusively within purview of NHTSA.[24]

---

[20]  *Robinson* Compl. ¶ 36.

[21]  *See id.* ¶¶ 42–73.

[22]  *See id.* 16; *Robinson* Docket Report 1, attached as Ex. J.

[23]   *See Robinson* Defs.' Mem. Supp. Mot. Dismiss 1–25; *Robinson* Defs.' Mem. Supp. Mot. Strike 1–21, attached as Ex. K.

[24]  *See Robinson* Defs.' Mem. Supp. Mot. Dismiss 12–21.

D.      The *Lamb* Action.

Lamb and Buser seek to pursue two Florida-specific claims against Graco and Newell on behalf of themselves and a putative class of "[a]ll Florida residents who purchased a Graco TurboBooster manufactured prior to the implementation of the current TurboBooster design."[25] Lamb and Buser also allege that they purchased their TurboBoosters because they were mislead into believing their seats complied with FMVSS 213.[26]   The Douthit Firm and the Richardson Patrick Firm also represent the *Lamb* Plaintiffs.[27]

Graco and Newell moved jointly to dismiss the *Lamb* Complaint for lack of subject-matter jurisdiction and for failure to state a claim, as well as to strike all class action allegations contained therein.[28]   The *Lamb* Complaint is also predicated on the assertion that certain TurboBoosters did not comply with FMVSS 213 and therefore is within the exclusive jurisdiction of the NHTSA.[29]   In addition to the ongoing briefing of these Rule 12(b) motions, the Court in *Lamb* has issued an Initial Scheduling Order.[30]

## ARGUMENT

I.      **Robinson Fails to Show That Her Case and *Lamb* Are Exceptional Cases Which Share Unusually Complex Questions of Fact Justifying Transfer of *Lamb* to South Carolina.**

Three factors determine whether consolidation under Section 1407 is appropriate:  1) whether the actions involve common questions of fact; 2) whether consolidation serves the

---

[25]   *Lamb* Compl. ¶ 38.

[26]   *See id.* ¶¶ 44–75.

[27]   *Lamb* Docket Report 1.

[28]    *See Lamb* Docket Report 2; *Lamb* Defs.' Mem. Supp. Mot. Dismiss 1–25; *Lamb* Defs.' Mem. Supp. Mot. Strike 1–25, attached as Ex. L.

[29]   *See Lamb* Defs.' Mem. Supp. Mot. Dismiss 11–22.

[30]   *Lamb* Docket Report 2.

convenience of the parties and witnesses; and 3) whether consolidation promotes the just and efficient conduct of such actions.  28 U.S.C. § 1407(a).  When a minimal number of actions are involved — indeed here the bare minimum — the moving party bears a "strong burden" to show the cases are "*exceptional cases sharing unusually complex questions of fact*."  *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (emphasis in original).  Such exceptional and unusually complex cases arise only where the "common questions of fact are so complex and the accompanying common discovery [is] so time-consuming" that a transfer is the only way the cases can be efficiently and fairly discovered and prepared for trial.  *Id.*  Robinson does not even come close to satisfying this heightened burden of consolidating just two cases under Section 1407.

### A.    *Robinson* and *Lamb* Are "Only Two Actions" That Do Not Support Transfer.

As this Panel has held on literally hundreds of prior occasions, *Robinson* and *Lamb* are "only two actions" that simply do not justify transfer under Section 1407 due to the limited efficiency gains.  *See, e.g.*, *In re Nissan North Am., Inc., Infiniti FX Dashboard Prods. Liab. Litig.*, 715 F. Supp. 2d 1355, 1356 (J.P.M.L 2010) (two actions); *In re Dorel Juvenile Grp., Inc., Stroller (Model 834) Prods. Liab. Litig.*, 598 F. Supp. 2d 1365, 1366 (J.P.M.L 2009) (two actions); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d 1382, 1382–83 (J.P.M.L. 2008) (two actions); *In re Chilean Nitrate Prods. Liab. Litig.*, 787 F. Supp. 2d 1347, 1347–48 (J.P.M.L. 2011) (two actions); *In re Webloyalty.com, Inc., Mktg. & Sales Practices Litig.*, 768 F. Supp. 2d 1365, 1366 (J.P.M.L. 2011) (two actions); *In re Easysaver Rewards Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1358, 1359  (J.P.M.L. 2010) (two actions); *In re Intelius, Inc., Post-Transaction Sales & Mktg.*, 706 F. Supp. 2d 1374, 1375 (J.P.M.L. 2010) (two actions); *In re Pfizer Inc. Mktg. & Sales Practices Litig.*, 657 F. Supp. 2d 1367, 1367–68 (J.P.M.L. 2009) (two actions); *In re Glaceau Vitaminwater Mktg. & Sales Practices*, 641 F.

Supp. 2d 1381, 1381 (J.P.M.L. 2009) (two actions); *In re S.C. Johnson & Son, Inc., Greenlist Label Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1317, 1318 (J.P.M.L. 2009) (two actions); *In re Best Buy Co., Inc., Restocking Fee Sales Practices Litig.*, 528 F. Supp. 2d 1364, 1365 (J.P.M.L. 2007) (two actions).[31]

Indeed, the Panel's opinion in *In re Nissan North America* is particularly instructive.  715 F. Supp. 2d at 1356.  In *Nissan*, one action sought to establish a Missouri-wide class, and the other sought a Texas-wide class.  Both actions arose from an alleged common defect in the dashboards of certain vehicles.  Both sets of plaintiffs alleged monetary loss stemming from alleged misrepresentations made to them about the dashboards.  In denying transfer, this Panel held that "the parties have not convinced us that those questions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time."  *Id.*; *accord In re Best Buy Co., Inc., Restocking Fee Sales Practices Litig.*, 528 F. Supp. 2d at 1365 ("Inasmuch as this litigation involves only two actions, the proponents of centralization have failed to persuade us that any common questions of fact are sufficiently complex and/or numerous to justify Section 1407 transfer in this docket at this time.").

In particular, transfer of "only two actions" is unwarranted when, as here, the actions involve purchases of products based on alleged misrepresentations.  In such cases, questions of fact surrounding when, how, and why the product was purchased are too unique to each

---

[31]   The decisions Robinson cites where the Panel granted motions to transfer involving only two cases are wholly distinguishable from this litigation.  *See In re Cross-Florida Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971) (granting transfer where two cases involved the determination of whether a single occurrence constituted a violation of the same federal environmental law, and all parties supported the transfer); *In re First Nat'l Bank, Heavener, Okla., Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (granting transfer where two cases involved the same federal securities law violations and both cases were brought by the same plaintiffs on behalf of identical classes).

constituent case to warrant consolidation.  *See, e.g.*, *In re S.C. Johnson & Son, Inc., Greenlist Label Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d at 1318 (denying transfer of only two actions alleging deceptive sales of cleaning products); *In re Dorel Juvenile Grp., Inc., Stroller (Model 834) Prods. Liab. Litig.*, 598 F. Supp. 2d at 1366 (denying transfer of only two actions alleging deceptive sales of stroller); *In re Glaceau Vitaminwater Mktg. & Sales Practices*, 641 F. Supp. 2d at 1381 (denying transfer of only two actions alleging deceptive beverage sales); *In re Pfizer Inc. Mktg. & Sales Practices Litig.*, 657 F. Supp. 2d at 1367–68 (denying transfer of only two actions alleging deceptive prescription drug sales); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d at 1381 (denying transfer of only two actions alleging deceptive vehicle sales); *In re Easysaver Rewards Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d at 1359 (denying transfer of only two actions alleging deceptive internet flowers sales).

Likewise, transfer of "only two actions" is improper particularly when the actions, like *Robinson* and *Lamb*, already share common counsel because the efficiency gains from discovery coordination will occur without transfer.  *See, e.g.*, *In re Dorel Juvenile Grp., Inc., Stroller (Model 834) Prods. Liab. Litig.*, 598 F. Supp. 2d at 1366 (denying transfer "[i]nasmuch as this litigation involves only two actions, and plaintiffs share counsel"); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d at 1382–83 (denying transfer of only two actions since "plaintiffs in both actions share counsel"); *In re Chilean Nitrate Prods. Liab. Litig.*, 787 F. Supp. 2d at 1347–48 (denying transfer of only two actions since "plaintiffs in both actions are represented by one law firm, and another law firm represents [defendants] in both actions").

Robinson cannot carry the enhanced burden of proving that consolidating these two actions is warranted.  She fails to explain why determining whether the TurboBooster complies with certain parts of FMVSS 213 presents unusually complex questions of fact.  Indeed, that

question must be determined by NHTSA, not the federal courts, and NHTSA has never determined that the TurboBooster fails to comply with FMVSS 213.  Nor does Robinson explain how her case and the *Lamb* case so overlap to create exceptionally complex and time consuming discovery demands, despite her bare contention the two cases, "overlap, are parallel, or are identical in most instances."  (*See* Br. 2.)

Even a cursory reading of the *Robinson* and *Lamb* Complaints demonstrates that just the opposite is true.  *Robinson* and *Lamb* seek to establish two separate and mutually exclusive statewide classes.  (*See Robinson* Compl. ¶ 36; *Lamb* Compl. ¶ 38.)  There are no overlapping plaintiffs whatsoever.  Accordingly, *Robinson* and *Lamb* do not provide common questions of class certification to support transfer.  *See, e.g.*, *In re Nissan North Am., Inc.*, 715 F. Supp. 2d at 1356 (denying transfer of two putative class actions when "there are no overlapping classes"); *In re Lycoming Crankshaft Prods. Liab. Litig.*, 473 F. Supp. 2d 1380, 1381 (J.P.M.L. 2007) (denying transfer of three putative class actions when "no overlap exists between the putative classes").  Where, as here, the moving party does no more than provide vague incantations — without demonstrating how "common questions of fact are so complex and the accompanying common discovery so time-consuming" — she does not meet her burden.  *See In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. at 544; *see also In re Movie Artwork Copyright Litig.*, 473 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (denying transfer when "[t]he asserted common factual questions identified by defendants appear to be either simply a generic listing of elements found in virtually every copyright and trademark infringement action, or issues that arise in any situation involving multiple actions brought against a common defendant or defendants").  Because Robinson fails to establish her case and *Lamb* are exceptional actions sharing unusually

complex questions of fact that need to be consolidated to proceed efficiently, transfer should be denied.[32]

**B.** **The Transfer of *Lamb* to the District of South Carolina Will Not Be for the Convenience of the Parties and Witnesses and Will Not Promote Just and Efficient Discovery.**

Although Robinson recites the language of Section 1407 several times in boilerplate fashion over the course of six pages of her motion (*see, e.g.*, "[t]hese cases involve complex factual and legal issues, and the parties, witnesses, and judicial system will benefit from having them, and any tag-along actions, coordinated or consolidated to avoid duplicative discovery and motion practice" (Br. 5)), the reasons she gives for consolidation do not withstand scrutiny. Consolidation of these two actions will not materially benefit the parties and witnesses, nor will it promote just and efficient discovery in these actions.

**1.** **Common Discovery Has Already Been Completed.**

As noted above, discovery common to the factual issues relating to the TurboBooster in *Robinson* and *Lamb* has largely been completed, and is already in the possession of the Douthit Firm. *See, e.g.*, *In re Hungarian Holocaust Litig.*, 763 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011) (denying transfer when "complaint [was] the product of nine years of extensive factual research"); *In re Blood & Blood Prods. Hepatitis C Virus Prods. Liab. Litig.*, MDL No. 1349,

---

[32] Robinson's allusion to future tag-along actions deserves no weight. *See In re Zimmer Inc., Centralign Hip Prosthesis Prods. Liab. Litig. II*, 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005) ("Proponents of transfer have alluded to the prospect of additional actions that are or may soon be pending in additional districts as a reason for ordering centralization. We note, however, that such actions are not now before the Panel, and their pendency does not create a persuasive reason for transfer . . . ."). But even with future tag-along actions, Robinson's motion for transfer would still fail to satisfy the purposes of Section 1407. *See, e.g.*, *In re Blood & Blood Prods. Hepatitis C Virus Prods. Liab. Litig.*, MDL No. 1349, 2000 U.S. Dist. LEXIS 11149, at *3–4 (J.P.M.L. Aug. 2, 2000) (denying consolidation of eleven actions where the parties shared common counsel and the common discovery had already been conducted in a prior action).

2000 U.S. Dist. LEXIS 11149, at *3–4 (J.P.M.L. Aug. 2, 2000) (denying transfer when "a great deal of common discovery has already been conducted" in a prior action).  Indeed, the *Robinson* and *Lamb* Plaintiffs rely specifically on the discovery from *McCune* as providing the basis for their claims.  (*See Robinson* Compl. ¶¶ 35, 67; *Lamb* Compl. ¶¶ 37, 69.)  Among the discovery sought in *McCune* by the Douthit Firm were the following requests to produce directed to Graco:

### From the First Set of Requests to Produce in *McCune*

5.   All documents generated by any person, committee, task force or team employed by you or acting on your behalf, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of the TurboBooster.

27.  This request relates to the following: all tests or experiments performed by you, whether static or dynamic, and whether experimental, prototype or otherwise, where a TurboBooster was tested.  For each such test or experiment, produce all:

     a.   Test summaries.

     b.   Test data.

     c.   Test videotapes and photographs (all pre and post-test photographs are to be produced in color or in digital form with the images in color).

     d.   All memoranda or other documents which identifies each person employed by you who was present at the time of the test.

     e.   All documents which discuss, reflect, pertain or relate to the test.

36.  All documents that discuss, refer, relate or pertain to instances where, during dynamic testing of the TurboBooster, there was any structural failure associated with the TurboBooster's arm rest, the seat seam (where the top and bottom halves of the seat bottom fit together) or any involved attaching hardware.

### From the Third Set of Requests to Produce in *McCune*

3.   This request relates to the following: all tests or experiments performed by you, whether experimental, prototype or otherwise, where a TurboBooster was dynamically tested and where, during the test, the

armrest completely "pulled out" from the base, was "drawn out" of the base, or otherwise failed to maintain its structural integrity during the test. For each such test, produce all:

    a.   Documents that discuss, refer, relate or pertain to any investigation, study, analysis or other review of the test where any such investigation, study, analysis or review was intended by you to comply, in whole or in part, with the requirements of CFR 49 CFR 573;

    b.   Documents that you sent to NHTSA advising NHTSA of the test results;

    c.   Documents that you drafted with the intent of sending notification of the test results to NHTSA but that were never sent;

    d.   Documents that discuss, refer, relate or pertain to the question of whether the loss of integrity between the arm rest and the base was, or could be, a failure to comply with FMVSS 213.

(*See* Aff. Joseph J. Krasovec III ¶ 4.)

In response to these and numerous other requests to produce focused on the TurboBooster, Graco produced approximately 89,000 pages of documents. (*See id.* ¶ 5.) Graco also produced seven current and former employees for depositions in *McCune.* (*See id.* ¶ 8.) Graco's discovery responses remain in the possession of the Douthit Firm who represent the *Robinson* and *Lamb* Plaintiffs. Accordingly, there is no legitimate reason to consolidate these cases to perform discovery that has already been completed.

### 2. Common Counsel Can Adequately Facilitate Coordination of Discovery Without Transfer.

Transfer is also unnecessary because the same lawyers represent the Plaintiffs and Defendants in *Robinson* and *Lamb*, so coordination of discovery is inevitable. "In these circumstances, informal cooperation among the involved attorneys is both practicable and preferable" to transfer. *See, e.g., In re Chilean Nitrate Prods. Liab. Litig.*, 787 F. Supp. 2d at

1347–48 (denying transfer when "plaintiffs in both actions are represented by one law firm, and another law firm represents [defendants] in both actions"); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d at 1382–83 (denying transfer when "both actions share counsel"); *In re UBS Fin. Servs., Inc., Wage & Hour Emp't Practices Litig.*, MDL No. 2279, 2011 WL 4889233, at *1 (J.P.M.L. Oct. 12, 2011) (denying transfer when "informal cooperation to avoid duplicative proceedings is appropriate where plaintiffs share counsel").

Robinson ignores her obligation to demonstrate that alternatives to transfer must be inadequate. As the Panel has repeatedly recognized, when the number of current and prospective cases is minimal, and there is an identity of counsel across both cases, suitable alternatives to transfer exist to minimize the possibility of duplicative discovery:

> [N]otices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; either party could seek orders from the appropriate district courts directing the parties to coordinate any pretrial efforts germane to more than one action; and either party may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions.

*Sears, Roebuck & Co. Emp't Practices Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980) (citations omitted). In fact, these alternatives to transfer are "practicable and preferable" when, as here, common counsel appear in both actions. *See, e.g.*, *In re Chilean Nitrate Prods. Liab. Litig.*, 787 F. Supp. at 1347–48 (denying transfer when "plaintiffs in both actions are represented by one law firm, and another law firm represents [defendants] in both actions"); *In re BMW Reverse Transmission Prods. Liab. Litig.*, 543 F. Supp. 2d at 1382–83 (denying transfer when "both actions share counsel").

Robinson never shows why these alternatives to consolidation under Section 1407 would be an ineffective means to avoid duplicative discovery given the absolute minimum number of

actions involved here.  Accordingly, consolidation of *Robinson* and *Lamb* is not necessary, or even warranted.

### 3.    Discovery Will Focus on the Separate Factual Issues Unique to *Robinson* and *Lamb*.

Unlike the discovery regarding the design, testing and performance of the TurboBooster, which is common to both cases and already completed in the prior *McCune* action, discovery into the factual issues surrounding the version of each TurboBooster purchased, why it was purchased, and how it was used by Plaintiffs Robinson, Lamb and Buser are unique to their respective cases.  No efficiency will be gained by consolidating these actions, since discovery as to each of these Plaintiffs has not yet taken place.   This fact alone warrants the denial of Robinson's motion for transfer.  *See, e.g.*, *In re Victoria's Secret Undergarments/Intimate Apparel Prods., Liab. Litig.*, 626 F. Supp. 2d 1349, 1350 (J.P.M.L. 2009) (refusing transfer when discovery on "common allegation may be overshadowed by factual issues unique to each action"); *In re Arthur J Gallagher Risk Mgmt. Servs.*, 571 F. Supp. 2d 1370, 1371 (J.P.M.L. 2008) (refusing transfer when "the primary focus of discovery in each action will be the individual conduct" of the plaintiffs).

*Robinson* and *Lamb* will not involve overlapping and duplicative discovery, but rather each will focus on the respective factual issues unique to those Plaintiffs' purchase and use of their TurboBoosters.  Discovery in *Robinson* will likely involve a unique factual inquiry into Robinson's South Carolina-specific claims — such as what version of the TurboBooster she purchased; where and when she purchased it; why and under what circumstances she purchased it; what she read on the packaging when purchased; where she used it (if she used it at all); how it performed during any such use; whether she still owns or has a need for it; whether it ever malfunctioned in any respect; whether its usage caused any damage; and what other possible

- 16 -

harm she ever suffered in connection with the use of this product.  Such discovery will shed no light on the issues in *Lamb*.  In contrast, discovery in *Lamb* will center on Lamb's and Buser's purchasing decisions, the use of their TurboBoosters and distinct factual issues pertinent to their Florida state law claims.

Furthermore, *Robinson* and *Lamb* involve only state law claims and defenses, which will limit or expand discovery specific to each action.  There is no efficiency in a judge presiding over pretrial discovery proceedings in different state-law specific cases.  For instance, the economic loss rule in South Carolina bars the fraudulent concealment claim in *Robinson*, while Florida has no such rule applicable in *Lamb*.  Similarly, the privity requirement in Florida bars the breach of warranty claim in *Lamb*, while South Carolina has no corollary applicable in *Robinson*.  It is neither just nor efficient to wrench from the District Court in Northern Florida decisions involving Florida law, and repose those decisions instead to a forum with less, or perhaps even no experience applying Florida law.  *Cf. Sauerhoff v. Hearst Corp. (Baltimore News Am. Div.)*, 538 F.2d 588, 591 (4th Cir. 1976) ("[A] federal court judge who sits in a particular state and has practiced before its courts may be better able to resolve complex questions as to the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state." (citation omitted)); *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 (7th Cir. 1987) ("[D]istrict court decisions construing the law of the state in which it sits are entitled to some deference . . . because we presume that a district judge is likely to have a special familiarity with the law of the state in which he or she sits." (citations omitted)).  In short, there is no efficiency to be gained or costs to be saved by transferring a matter governed by Florida law to a Court sitting in South Carolina.

II.     **Alternatively, Robinson's Motion Should Be Stayed Pending Rulings by the _Robinson_ and _Lamb_ Courts on All Rule 12(b) Motions.**

Robinson's motion for transfer should be denied for all the reasons set forth above.  If, however, the Panel determines that transfer sought might be appropriate, transfer should nonetheless be stayed pending rulings by the _Robinson_ and _Lamb_ Courts on Defendants' pending Rule 12(b) motions.  _See, e.g._, _In re Kaehni Patent Litig._, 311 F. Supp. 1342, 1344 (J.P.M.L. 1970) (staying transfer of action pending ruling on defendant's motion to dismiss).  When, as here, pending motions "may have a substantial effect on the resolution of the[] actions," transfer is inappropriate.  _See, e.g._, _In re Am. Home Prods. Corp. "Released Value" Claims Litig._, 448 F. Supp. at 278 (denying transfer of three actions); _In re Hungarian Holocaust Litig._, 763 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011) (denying transfer of two actions when "the actions 'will be principally litigated on Rule 12 motions'").  Indeed, rulings on these motions to dismiss would not only "have a substantial effect on the resolution" of _Robinson_ and _Lamb_, they could moot this motion for transfer entirely.  _See In re Am. Home Prods. Corp. "Released Value" Claims Litig._, 448 F. Supp. at 278.

A stay is particularly appropriate here because each District Court's jurisdiction to hear these matters is highly questionable.  In both _Robinson_ and _Lamb_, Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss these complaints on the grounds that these Plaintiffs lack standing to bring their claims because they have suffered no legally cognizable injury.  (_See Robinson_ Docket Report 3; _Lamb_ Docket Report 2.)  Subject-matter jurisdiction is a threshold issue that prevents transfer because "a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case."  _Bancohio Corp. v. Fox_, 516 F.2d 29, 32 (6th Cir. 1975) (issuing writ of mandamus addressed to transferor court to dismiss complaint for want of subject-matter jurisdiction); U.S. Const. Art. III, § 2, cl. 1 (limiting federal judicial

power to "cases" and "controversies"); *see also* 42 U.S.C. § 1407 (limiting the Panel's power to federal "civil actions . . . pending in different districts").

In *Bancohio*, the Sixth Circuit Court of Appeals issued a writ of mandamus after the Panel entered a conditional transfer order and the petitioners moved to vacate that order.  516 F.2d at 31–32.  In granting the extraordinary relief of mandamus, the Court of Appeals held that "a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case."  *Id.* at 32; *accord Moore's Federal Practice* § 112.02, at 112–12 (3d ed. & 2011 supp.) ("A case may be transferred under the Multidistrict Litigation Statute only if the prospective transferor court has subject-matter jurisdiction over the action." (citations omitted)); 15 C. Wright *et al.*, *Federal Practice & Procedure* § 3863 (3d ed. & 2011 supp.) ("Of course, federal subject matter jurisdiction must exist" as a "prerequisite[] for transfer under Section 1407." (citation omitted)).  The threshold issue of subject-matter jurisdiction is not about consistency of pretrial rulings, but rather about the Constitutional limit on all federal courts to decide only cases or controversies.  Until these issues are resolved in both *Robinson* and *Lamb*, these cases are not ripe candidates for transfer under Section 1407.  *See Bancohio Corp.*, 516 F.2d at 32.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that Robinson's motion for transfer of actions pursuant to 28 U.S.C. § 1407 be denied.   In the alternative, if the Panel determines that transfer may be appropriate, Defendants request that Robinson's motion for transfer be stayed pending rulings by the *Robinson* and *Lamb* Courts on all Rule 12(b) motions now pending in those Courts.


Dated this 14th day of November, 2011.


Respectfully submitted,


By: /s/ Joseph J. Krasovec, III
Joseph J. Krasovec, III
Heidi K. Oertle
Schiff Hardin LLP
233 S. Wacker, Suite 6600
Chicago, Illinois  60606
312-258-5500
312-258-5600 (facsimile)
jkrasovec@schiffhardin.com
hoertle@schiffhardin.com

*Counsel for Defendants Graco Children's Products Inc. and Newell Rubbermaid Inc.*

*D.S.C., No. 2:11-cv-02379*
*N.D. Fla., No. 4:11-cv-00477*

### PROOF OF SERVICE

The undersigned, an attorney, hereby certifies that on November 14, 2011, he filed the foregoing Joint Response of Defendants Graco Children's Products Inc. and Newell Rubbermaid Inc. in Opposition to Plaintiff Christina M. Robinson's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 and this Proof of Service was served by the Case Management/Electronic Case Filing (CM/ECF) system, which will provide electronic notice of that filing to all counsel of record.

/s/ Joseph J. Krasovec, III
Joseph J. Krasovec III